# Richmond.

## CHARLES BUZZARD v. COMMONWEALTH.

### November 16, 1922.

1. PEDIGREE—*Age—Rape—Admissibility of School Census.*—In a prosecution for rape, where the vital question was the age of the prosecutrix, the public school census as stated by the county superintendent, whose testimony did not appear to have been objected to, was properly admissible to corroborate the prosecutrix and her parents as to her age.

2. PEDIGREE—*Age—Admissibility of Family Bible where Maker of Entries is Available as Witness.*—The admissibility of a family Bible upon the question of a person's age is restricted to cases in which the persons on whose knowledge the reliability of the record depends are not available as witnesses.

3. PEDIGREE—*Age—Rape—Admissibility of Family Bible where Maker of Entries is Available as Witness—Case at Bar.*—In the instant case, a prosecution for rape, the prosecutrix's age was the vital question. The testimony for the Commonwealth was that the prosecutrix was between thirteen and fourteen when the attempt was made. The testimony for the defendant on the other hand was that the girl was over fifteen. The person who took the school census said that she got prosecutrix's age from the family Bible, and her age as entered by this person would have made her more than fifteen at the time of the alleged crime. The Commonwealth sought to introduce the family Bible as proof of the age of the prosecutrix. The entries in the Bible were made by the father of prosecutrix who testified in the case.

   *Held:* That while the father might have used the Bible to refresh his memory, and it might have been admissible to contradict the testimony of the person taking the school census, the objection to its introduction as proof of the age of the prosecutrix ought to have been sustained.

4. RAPE—*Age—Verdict—Evidence Sufficient to Support a Finding that Prosecutrix was Fourteen Years of Age.*—In the instant case, a prosecution for rape, the oral testimony for the Commonwealth was that the prosecutrix was between thirteen and fourteen years of age, whereas the testimony for the defendant was that the girl was over fifteen years of age when the alleged crime was committed. No witness

on either side fixed her age at fourteen. Her father testified that she was born in 1907, which would have made her age thirteen at the time of the alleged crime, but admitted that he recorded her birth as of 1906, which would have made her age fourteen at that time. The jury saw the prosecutrix, heard her testify, and inspected her size and weight and appearance as compared with other young women whose respective ages were in evidence.

*Held:* That the question of the prosecutrix's age was peculiarly within the province of the jury, and the evidence was not such as to warrant the court in saying that the jury could not properly fix it as they did at fourteen years.

5. RAPE—*Attempt to Commit Rape—Consent—Age.*—In a prosecution for rape, the Commonwealth proved, and the defendant admitted, an unsuccessful attempt on his part to have carnal intercourse with the prosecutrix. The attempt was made with her consent.

*Held:* That if the prosecutrix was under fifteen years of age, regardless of whether she was under fourteen, the act of defendant was an attempted rape. It is true that force, actual or constructive, is essential to the crime of rape, and that there is no force where the female is legally capable of giving her consent, and does so. But in Virginia the age of consent is fifteen years. Under that age she cannot legally consent to the act, and constructive force is present, even though she does in fact consent. The statute in this State recognizes what may be termed a qualified consent between the ages of thirteen and fifteen, and graduates the punishment accordingly; but this does not affect the classification or designation of the offense.

6. STATUTES—*Construction—Purpose—Intention of Lawmaker—Absurd Results.*—The purpose of statutory construction is to ascertain the intention of the lawmakers. This intention must be gathered from the words used, but unreasonable or absurd results must not be reached by too strict adherence to literal interpretation.

7. STATUTES—*Construction—Statutes in Pari Materia—Acts 1918, Chapter 82, page 139, and Code of 1919, section 4767.*—Statutes *in pari materia,* as are the Acts of 1918, chapter 82, page 139, and Code of 1919, section 4767, must be considered together, and compared with each other in the construction of their various material provisions.

8. STATUTES—*Construction—Literal Meaning Yielding to Fair Interpretation.*—The literal meaning of separate provisions, if in apparent conflict with, must yield to a reasonable and fair interpretation to be gathered from the context, the subject-matter, and the reason and spirit of the law.

9. STATUTES—*Construction—Penal Statutes Construed Strictly.*—Penal statutes must be construed strictly in favor of the defendant, not to the extent of defeating the clear intent of the legislature, but so as to resolve favorably to the defendant all reasonable doubts arising from the language used.

10. ATTEMPTS TO COMMIT CRIME—*Attempt to Commit Rape—Punishment—Construction of Section 4767, Code of 1919.*—In view of Acts 1918, chapter 82, page 139, and the general rules and principles of statutory construction, section 4767, Code of 1919, should be construed as if it read as follows: "If the offense attempted be punishable with death, the person making such attempt shall be confined in the penitentiary not less than two nor more than five years, except that attempts to commit rape [if the consummated act would be punishable with death] shall be punishable with death, or," etc., * * * "if it be punishable by confinement in the penitentiary [including rape for which the maximum punishment is confinement in the penitentiary he shall be confined in jail not less than six nor more than twelve months."

11. RAPE—*Attempt to Commit Rape—Punishment—Instructions—Case at Bar.*—In the instant case, a prosecution for rape, the court instructed the jury that if they found defendant guilty of an attempt to commit rape, then the law provides that the punishment should be death, "or, in your discretion, confinement in the penitentiary not less than three nor more than eighteen years." And later the court added, "It is within your absolute discretion to fix the punishment within those limits." The vital question in the case was the prosecutrix's age, as it was proved, and defendant admitted, an attempt at carnal intercourse with her with her consent.

*Held:* Error, as the jury ought to have been told that if they believed the prosecutrix was under fourteen years old, they should fix the defendant's punishment at death, or, in their discretion, confinement in the penitentiary not less than three nor more than eighteen years; but that if they believed she was over fourteen and less than fifteen, and gave her consent, they should fix the punishment at confinement in jail not less than six nor more than twelve months.

Error to a judgment of the Circuit Court of Augusta county.

*Reversed.*

The opinion states the case.

*Timberlake & Nelson* and *Curry & Curry,* for the plaintiff in error.

*John R. Saunders, Attorney-General, J. D. Hank, Jr., Assistant Attorney-General,* and *Leon M. Bazile, Second Assistant Attorney-General,* for the Commonwealth.

KELLY, P., delivered the opinion of the court.

The charge in the indictment in this case is that on January 23, 1921, the defendant, "Charles Buzzard, in and upon one Alto Robertson, a female child under the age of fifteen years, to-wit, of the age of thirteen years, violently and feloniously did make an assault; and he, the said Alto Robertson, then and there, to-wit, on the day and year aforesaid, unlawfully and feloniously, did carnally know and abuse, against the peace and dignity of the Commonwealth."

The verdict of the jury was as follows: "We, the jury, find the accused, Charles Buzzard, guilty of attempted rape of Alto Robertson, under the indictment, with her consent, and that she was over the age of fourteen years and under the age of fifteen years, and fix his punishment at three years in the State penitentiary."

The trial court refused to set this verdict aside, and pronounced sentence in accordance therewith.

There are numerous assignments of error, several of which are substantially identical. In our view of the case only three of them need be considered.

[1] 1. The first question which confronts us relates to the admission in evidence of a family Bible, and arises under the circumstances now to be related: The Commonwealth proved and the defendant admitted an unsuccessful attempt on his part to have carnal intercourse with the girl. It was reasonably clear from the evidence, and the jury found, that the attempt was made with her consent. The vital question was as to her age. If she was fifteen or more, the defendant was not guilty of any crime embraced in the indictment. If she was less than fifteen, then the gravity of the offense, and the maximum and minimum punishment,

depended upon whether she was under the age of fourteen years. This issue concerning her age, as well said by counsel for the defendant, "was the storm center of the case." The oral testimony for the Commonwealth, given by the prosecutrix and her parents, was that she was born in March, 1907, and was therefore between thirteen and fourteen when the attempt was made. The public school census, as stated by the county school superintendent, whose testimony does not appear to have been objected to, and which was properly admissible to corroborate her and her parents, showed that her age was recorded at school, as of May, 1920, thus: "Alto Robinson, thirteen years." The testimony for the defendant, on the other hand, was that the girl was born in March, 1905, and was, therefore, over fifteen when the alleged crime was committed. No witness on either side fixed her age at fourteen.

On cross-examination, the prosecutrix testified that her age was written down in the Bible, and in this connection said: "Every time my birthday comes papa says, 'this is your birthday.' You can look in the Bible."

So also, her mother, on cross-examination, said: "Her father keeps their (the children's) ages, as he can figure. He puts them down in the Bible." She also testified that she could not read, and that when Mrs. Glover, who was taking the census in February, 1920, called at her home, she gave Mrs. Glover the Bible and that her daughter's age was then determined from that source.

.Mrs. Glover's testimony was to the effect that the girl's mother gave her the Bible to enable her to record Alto's age, that the Bible showed the date of birth as being in March, 1905, and that following her rule of counting from the last birthday and recording the com-

pleted year, she noted the girl's age as fourteen in February, 1920. This would have made her past fifteen when the alleged crime was committed.

On direct examination, J. L. Robinson, father of the prosecutrix, had testified that he was certain she was born in 1907. On cross-examination he was asked how he knew that fact, and his answer was this: "I got her age down. I got it in the Bible wrong, and told the grand jury and will tell you, that it was 1907. I put the ages down on a piece of paper, and when it got so I couldn't read them plain, I transferred them to the Bible. I put her age down wrong in the Bible. I put it down 1906—it ought to be 1907."

At the conclusion of all the evidence on both sides, the Commonwealth, as the bill of exceptions certifies, "recalled J. L. Robinson for the purpose of introducing his family Bible, in answer to question on cross-examination, to show the age of the prosecutrix." Thereupon the defendant objected to the introduction of the book, upon the ground, among others, that it was "not competent evidence to show the age of the prosecutrix." The objection was overruled, the Bible was admitted, and the defendant excepted.

[2, 3] It would have been competent, as contended by the Attorney-General, to admit the Bible in evidence at the instance of the Commonwealth for the purpose of contradicting the testimony of Mrs. Glover as to the year of birth recorded therein. But it does not appear to have been offered for that purpose, and we are unable to see any other proper ground for its admission as a part of the Commonwealth's evidence. Mr. Robinson might, if he desired to do so, have properly been allowed to refresh his memory by reference to it, but not to introduce it as primary evidence. He had made the entries and he was present in court as a witness. Under

these circumstances the entries in the book were not admissible.   The admissibility of such evidence is restricted to cases in which the persons on whose knowledge the reliability of the record depends are not available as witnesses.   1 Green. Ev., secs. 103, 104; *Idem*, Wigmore's Ed., sec. 103; Taylor on Evidence (9th ed.) 641; 2 Jones on Ev. (Blue Book 1913), sec. 316; Note Ann. Cas. 1912-A, p. 1218; *People* v. *Mayne*, 118 Cal. 516, 50 Pac. 654, 62 Am. St. Rep. 256; *People* v. *Sheppard*, 44 Hun (N. Y.) 565, 566; *Campbell* v. *Wilson*, 23 Tex. 252, 76 Am. Dec. 67.

We do not interpret the decision of this court in *Union Cent. Life Ins. Co.* v. *Pollard*, 94 Va. 146, 155, 26 S. E. 421, 36 L. R. A. 271, 64 Am. St. Rep. 715, relied upon by the Attorney-General, as being in conflict with the rule as we have stated it here, and as supported by the authorities which we have cited.   In that case the entry in the family Bible was made by a person who was not a member of the family, and the Bible itself was shown to have been published some years after the birth of the person whose age was in question.   But the book contained a record of births and deaths of the family, and had been kept and treated as the family Bible.   Under these circumstances, and without specific reference to the absence of better evidence, Judge Buchanan, who delivered the opinion of the court, said:  "The admissibility of an entry in a family Bible does not depend upon the handwriting or authorship of the entry, but upon the fact that it is in the family Bible.   It is of the nature of a record, and, being produced from the proper custody, is itself evidence.   The reason why it is admissible, although the handwriting be unknown or made by others than the family, is simply because the Bible being in the family, where all have access to it, the presumption is that the

entry would not be permitted to remain if the whole family did not adopt it, and thereby give authenticity to it.   *Monkton* v. *Attorney General,* 11 Eng. Chy. R. at pages 162-3 (2 Russ & Myline); *Hubbard* v. *Lees,* 1 Law Rep. (Court of Ex.), 255, 258; 1 Taylor on Evidence, sec. 650; 1 Greenleaf on Evidence, secs. 104, 105.''

While the opinion is silent on the subject of better evidence, it is fair, if not indeed necessary, to assume that the parents or other older members of the family of the insured were dead or out of reach of the court when the *Pollard Case* was tried.   The judgment there complained of was rendered in 1894, more than fifty years after the date in question; and, furthermore, the authorities cited by Judge Buchanan seem to show that such evidence must be excluded when the father or mother, or other declarant, is present in court, or within reach of process.

In this case, therefore, the family Bible could not have been properly introduced in evidence by the Commonwealth, except for the limited purpose of contradicting the testimony of Mrs. Glover, and the objection to its introduction as proof of the age of the prosecutrix ought to have been sustained.

[4] 2. It is insisted that the verdict of the jury cannot be sustained, and that the defendant is entitled to a new trial, because there was no evidence upon which the jury could properly find that the prosecutrix was fourteen years old.   We do not take this view of the case.   It is true that the direct testimony for the defendant fixed it at fifteen, and that no witness said she was fourteen; but in cases of this character much latitude must be accorded the jury as triers of the facts, and upon a view of the evidence as a whole it was not unreasonable for them to reach the conclusion that the true age of the girl was fourteen years.   If they were

satisfied beyond a reasonable doubt that she was under fifteen, and in doubt as to whether she was over thirteen, they rendered the only verdict which they could properly render upon the question of the defendant's guilt or innocence. Nor were they bound to accept as literally accurate the testimony of the witnesses on either side. The father testified that she was born in 1907. This would have made her age thirteen. He admitted, however, that he had recorded her birth as of 1906. This would have made her age fourteen. His statement as to the record of her age was brought out on cross-examination, and was properly in the case regardless of whether the Bible was introduced or not. Indeed, he might very properly have made the statement in chief. Whether his explanation of the mistake which he claimed to have made in this record was reliable, was a question for the jury. Furthermore, the jury saw the prosecutrix, heard her testify, and, at their own request, inspected her size and weight and appearance as compared with other young women who were brought before them, and whose respective ages were in evidence. The question of her age was peculiarly within their province, and the evidence was not such as to warrant us in saying that they could not properly fix it as they did at fourteen years.

3. The remaining assignment to be considered raises an interesting and important question of statutory construction.

After giving to the jury sundry written instructions, which need not be considered here, the court charged them orally as follows: "You will take the indictment and the court's instructions, and read these instructions carefully. You will consider the case dispassionately, with full regard for the rights of the Commonwealth and with full regard for the rights of the accused. If

you find that he is not guilty, you will say so and no more. If you find that he is guilty of an attempt to commit rape, then the law provides the punishment shall be death, or, in your discretion, confinement in the penitentiary not less than three nor more than eighteen years. Retire to your room."

To the giving of the foregoing charge the defendant objected, and noted an exception. After the jury had retired, counsel for the defendant, at the request of the court, stated the grounds of their exception, only two of which we deem it important to mention, and these may be briefly stated as follows: 1st. That the charge permitted the jury to find the defendant guilty of attempted *rape*, even though they might believe the prosecutrix was fourteen years old and consented to the intercourse, whereas, under such circumstances, the offense attempted would not be rape, but a felony punishable in no event by death, but only by confinement in the penitentiary; and, 2nd, that, therefore, the unqualified language of the charge, telling them that they might find the defendant guilty of attempted rape and fix the punishment at from three to eighteen years in the penitentiary, was erroneous as to the maximum and minimum punishment.

Thereupon, the court recalled the jury and charged them as follows: "Gentlemen of the jury: Give me your attention a minute. I told you before you went into the jury-room that it was within your discretion, for an attempt to rape, if you thought the accused was guilty, to fix his punishment at death, or confinement in the penitentiary not less than three nor more than eighteen years. I change that instruction to this extent—it is within your absolute discretion to fix the punishment within those limits. Within those limits, I think it is your discretion to do as you please about it, if you think the accused is guilty."

It is manifest that if the objection to the first charge was good, the second, which was also excepted to, did not cure the error.

[5] We have no difficulty in holding that, if the prosecutrix was under fifteen years of age, regardless of whether she was under fourteen, the act of the defendant was an attempted rape. It is true that force, actual or constructive, is essential to the crime of rape, and that there is no force where the female is legally capable of giving her consent, and does so. But in Virginia the age of consent is fifteen years. Under that age she cannot legally consent to the act, and constructive force is present, even though she does in fact consent. The statute in this State recognizes what may be termed a qualified consent between the ages of thirteen and fifteen, and graduates the punishment accordingly, but this does not affect the classification or designation of the offense. See Minor's Synop. Cr. Law, page 72.

The second objection urged to the court's oral charge is more serious, and involves far more difficulty. We feel constrained to hold that the objection was good, but it is clear that the trial court's ruling thereon was induced by the misleading language of the statute with respect to the range of the punishment for attempted rape.

The following statutory provisions must be considered in passing upon this question:

Acts 1918, chapter 82, page 139 (taking the place of section 4414, Code 1919): "If any person carnally know a female at fifteen years or more of age against her will, by force, or carnally know a female child under that age, or a female inmate of any hospital for the insane, etc. * * * he shall, in the discretion of the jury, be punished with death or confinement in the penitentiary not less than five nor more than twenty years.

But if such female child be over the age of fourteen years * * * and consents to the carnal knowledge, the punishment shall be confinement in the penitentiary not less than five nor more than twenty years."

Code 1919, section 4767: "Every person who attempts to commit an offense, and in such attempt does any act towards its commission, shall, when not otherwise provided, be punished as follows: If the offense attempted be punishable with death, the person making such attempt shall be confined in the penitentiary not less than two nor more than five years, except that attempts to commit rape shall be punishable with death, or in the discretion of the jury, or of the court trying the case without a jury, by confinement in the penitentiary not less than three nor more than eighteen years; if it be punishable by confinement in the penitentiary, he shall be confined in jail not less than six nor more than twelve months; * * *"

It is at once apparent that the learned judge of the trial court, in his charge to the jury, followed literally the language of the statute as to the maximum and minimum punishment for attempts to commit rape; but we are of opinion that when all of the provisions of the statutes quoted above are construed together, the intent to treat as a felony, and to punish accordingly, an attempt to have carnal intercourse with a female fourteen years old with her consent, cannot be imputed to the legislature.

The act of 1918 fixes the punishment for having carnal intercourse with a female of that age at confinement in the penitentiary from five to twenty years. For that offense the death penalty is not prescribed. If the words of section 4767 of the Code, "except that attempts to commit rape shall be punishable with death, or," etc., apply to an attempt to carnally know

a fourteen year old girl who gives her consent, then the legislature has provided a less severe penalty for the consummated offense than for the unsuccessful attempt to commit it. Such a result, it must be conceded, would be contrary to reason.

[6-9] The pertinent rules of statutory construction are well known and require no elaboration at our hands. The purpose of such construction is to ascertain the intention of the law makers. This intention must be gathered from the words used, but unreasonable or absurd results must not be reached by too strict adherence to literal interpretation. Statutes *in pari materia*, as are the act of 1918 and section 4767 of the Code, must be considered together, and compared with each other in the construction of their various material provisions. The literal meaning of separate provisions, if in apparent conflict with, must yield to a reasonable and fair interpretation to be gathered from the context, the subject matter and the reason and spirit of the law. Penal statutes must be construed strictly in favor of the defendant, not to the extent of defeating the clear intent of the legislature, but so as to resolve favorably to the defendant all reasonable doubts arising from the language used. Lile's Notes on Statutes, 24, 25, 27; 26 Am. & Eng. Ency. L. (2nd ed.) 602, 620.

[10] Applying these rules and principles to section 4767, and reading into it the intent of the legislature, we are of opinion that the terms thereof here involved should be interpreted as if it read as follows: "If the offense attempted be punishable with death, the person making the attempt shall be confined in the penitentiary not less than two nor more than five years, except that attempts to commit rape (if the consummated act would be punishable with death) shall be punishable with death, or, etc. * *; if it be punishable by con-

finement in the penitentiary (including rape for which the maximum punishment is confinement in the penitentiary) he shall be confined in jail not less than six nor more than twelve months."

This conclusion seems to us to offer the only just solution of the difficulty. We confess that it is not entirely satisfactory. It carries to the limit the warrant of the judiciary in reading into the statute an intent which has not been precisely expressed by the legislature. Any other conclusion, however, would be still less satisfactory. To hold that the legislature intended to punish with death an attempt to commit a crime when the crime itself carries a less punishment, would lead to an absurdity. To treat as a *causus omissus* the failure to provide in express terms for punishment of attempts to commit rape on a girl, fourteen years old, who gives her consent, would leave such attempts without any prescribed punishment. The construction which we have adopted harmonizes the statutes in question, provides for all classes of rape cases, is fair in its effect on defendants, and, as we think, does no violence to any rule of interpretation. It is true that our conclusion results in placing attempts to commit a certain class of rapes upon the same footing, in respect to the punishment, as attempts to commit other felonies not punishable with death, whereas there was an apparent general purpose to make the minimum and maximum punishment for attempts in all classes of rape greater than for other attempted felonies; and it may be that, when the legislature has its attention specially called to this situation, some change therein will be made. This consideration, however, is not sufficient to outweigh the others we have mentioned as justifying the construction which we have adopted.

[11] We are of opinion that the court erred in its

charge as to the maximum and minimum punishment. The jury ought to have been told that if they believed the prosecutrix was under fourteen years old, they should fix the defendant's punishment at death, or, in their discretion, confinement in the penitentiary not less than three nor more than eighteen years; but that if they believed she was over fourteen and less than fifteen, and gave her consent, they should fix the punishment at confinement in jail not less than six nor more than twelve months.

What has been said sufficiently disposes of all the questions raised under the several assignments of error, except as to the denial of a motion with respect to after-discovered evidence.    The latter question will not arise on another trial, and requires no further consideration.

For the reasons stated, we are of opinion that the judgment complained of must be reversed, the verdict of the jury set aside, and the cause remanded for a new trial, to be had not in conflict with the views herein expressed.

*Reversed.*