## Richmond

## CITY OF VIRGINIA BEACH v. VIRGINIA ELECTRIC AND POWER COMPANY

September 1, 1977.

Record No. 760826.

Present: All the Justices.

*Jay A. Richardson, Assistant City Attorney (J. Dale Brimson, City Attorney; Arthur Bergman, Assistant City Attorney,* on brief), for appellant.

*Joseph L. Kelly, Jr. (Williams, Worrell, Kelly & Greer,* on brief), for appellee.

POFF, J., delivered the opinion of the Court.

City of Virginia Beach (the City) appeals an adverse order entered March 1, 1976 upon its motion for declaratory judgment filed against Virginia Electric and Power Company (Vepco). Under an ordinance enacted May 27, 1963, the City granted Vepco a 30-year franchise to use city streets and other city property for the installation and maintenance of poles, lines, and other equipment used in the transmission and distribution of electric power. Vepco accepted the grant and paid the agreed fee. The franchise was made subject to certain conditions, including those defined in Section 5:

"In the event the relocation, construction, reconstruction, maintenance or repair by the City of any of its facilities or services now or hereafter acquired, and including but not limited to any street, alley or other public place . . . or in the event access to any street, alley or other public place to or from any property of the City is required, and it is necessary to move, alter or relocate . . . any of the Grantee's poles, towers, wires, appliances, conduits, subways, lines, manholes, cables or equipment . . . in order for the City to relocate, construct, reconstruct, maintain or repair any such facility . . . or to obtain access to or from such property, upon notice from the City, the Grantee will move, alter, or relocate such . . . equipment . . . at its own cost and expense. . . ."

On April 18, 1973, the City acquired a tract of land needed to construct a new portion of First Colonial Road. Vepco owned an easement across this land on which it had erected poles, lines, and related equipment. Invoking Section 5, the City notified Vepco to remove its equipment at its own expense. Vepco offered to relocate its equipment if the City agreed to bear the expense. The City refused and filed suit asking the trial court to determine the respective rights and obligations of the parties and to declare "that the defendant is required by [Section 5 of] said agreement to move, alter, or relocate such equipment . . . at its own cost and expense from 'hereafter acquired' facilities of the plaintiff." Vepco answered that since the equipment had not been installed on public property "in the exercise of any right or privilege granted by the franchise ordinance", it was not obligated to bear the costs.

At the time the ordinance was enacted, the present City had just been created by merger of 253 square miles of Princess Anne County with two square miles of the Town of Virginia Beach. Within the combined area, Vepco owned 27 miles of high-voltage transmission lines and 728 miles of distribution lines. All transmission lines (valued "in excess of three million dollars") and all but seven distribution lines were located on rights-of-way privately owned by Vepco.

The meaning and scope of Section 5 was first called into question in 1964 when Vepco applied for a special use permit for a new high-voltage transmission line. In a letter dated December 22, 1964 addressed to the city manager, the city attorney stated his opinion on the question:

"In view of the legal prohibition against taking property without just compensation, we do not believe the City Council intended to require the power company to remove or relocate, at their own expense, poles or lines located on privately owned property after they have been constructed, but only to require them to make provisions for future streets and highways where such future streets and highways are definitely determined prior to construction."

Enclosing a copy of that letter in a covering letter to Vepco, the city manager advised that he was "in agreement" with that opinion. Thereafter until the instant dispute arose in 1973, the City acknowledged on eight additional occasions that Vepco was

not obligated to bear the costs of relocating equipment installed on its own rights-of-way, and on each occasion, Vepco performed the work and the City paid the costs.

The trial court ruled in favor of Vepco. Its ruling was based upon its opinion that "the language of said Section 5 . . . does not plainly and unambiguously refer to poles, wires and equipment . . . built and maintained on [Vepco] property"; that "said provisions could not reasonably have been so intended in view of the facts and circumstances shown by the evidence to have existed at the time"; and that both the City and Vepco "during the first ten years after the granting of said franchise themselves construed the provisions . . . as applying to poles, wires and other equipment installed in streets . . . and as not applying to poles, wires and equipment . . . built on rights-of-way owned by [Vepco]."

█ The narrow question we must decide is whether the contract between the parties required Vepco to bear the costs of relocating transmission and distribution equipment located on its own rights-of-way when the City acquires the servient land for street construction. The trial court concluded that it did not. We agree, but unlike the trial court, we reach our conclusion without need to consider extrinsic evidence of the construction the parties placed upon the ordinance after its adoption.

> "[T]he purpose or intent of a written instrument is to be determined from the language used in the light of the circumstances under which it was written." *Phipps* v. *Leftwich*, 216 Va. 706, 710, 222 S.E.2d 536, 539 (1976).

Looking to the language of the franchise ordinance, and the circumstances under which it was written, we find nothing ambiguous about the bargain reached by the two contracting parties. Both had something to give and something to gain. The newly-born, fast-developing city needed electric power; Vepco was in the business of selling that commodity. Vepco needed rights-of-way to accommodate the equipment necessary to merchandise its product; the City controlled the streets, the public corridors interconnecting the market area. Both parties understood that growth and demographic changes would require changes in old streets and construction of new streets. As appears from the face of the ordinance, the City was already using and wanted to continue to use Vepco's poles and lines for

its "traffic control, fire alarm, and police communication facilities". These were the circumstances under which the parties negotiated their mutual contract.

■ The agreement was memorialized by the franchise ordinance. The City reminds us that such contracts must be construed strictly against the franchisee. But in 36 Am. Jur. 2d *Franchises* § 26 (1968), which the City cites for that rule, the author points out:

> "It is well recognized that the principle of strict construction does not preclude a fair and reasonable interpretation of such charter and franchises . . . . And except for the rule of strictly construing franchises, such instruments are governed by the same rules as contracts between individuals or private corporations." *Id.* at 749.

On appeal, as below, the City focuses its construction of the contract upon what it regards as the literal meaning of Section 5 of the ordinance. Yet, when the literal meaning of a particular provision of a statute appears to conflict with the "subject matter and the reason and spirit of the law", the literal meaning "must yield to a reasonable and fair interpretation to be gathered from the context". *Buzzard* v. *Commonwealth*, 134 Va. 641, 653, 114 S.E. 664, 667 (1922).

■ Section 5 is but one of 19 numbered paragraphs in the franchise ordinance. As stated in its title, the purpose of the ordinance is to grant a franchise "to use the streets, alleys, and other public places" for the erection and maintenance of certain itemized equipment "in, under, over and along such streets, alleys and other public places" for the transmission and distribution of electric power. The list of equipment is described by name. The descriptive list is repeated in eight of the numbered paragraphs, and in each instance the equipment contemplated by the contract is expressly identified by its situs, *i.e.*, as equipment located in "streets, alleys, and other public places". Although the body of the ordinance is expansive and obviously drafted with meticulous attention to minute detail, nowhere does it contain any reference whatever to equipment located on private land or private rights-of-way.

Under the City's construction, to the extent Vepco's equipment is located on land the City acquires for public improvements, the obligations of Section 5 could reach Vepco's entire transmission

and distribution system. By the use of the words "hereafter acquired", the City says, the parties intended that Vepco's duty to bear relocation costs should extend not only to equipment located on public property but also to equipment located on private property over which Vepco owns a right-of-way whenever the servient land is "hereafter acquired" by the City.

If these words can fairly be said to impart to Section 5 the literal meaning the City perceives, the literal construction "must yield" to what we believe is the only "reasonable and fair interpretation to be gathered from the context". *Buzzard* v. *Commonwealth, supra.* Viewing the contract in light of the circumstances under which it came into being, and giving ordinary meaning to the language repeatedly and consistently used to identify the subject equipment by its locus, we hold that Vepco's duty to bear relocation costs was intended to apply only to equipment located on public property, now owned or "hereafter acquired" by the City, installed thereon pursuant to the privilege granted by the franchise.

Since our holding rests upon one of the grounds underlying the ruling below, we need not decide whether the trial court erred with respect to additional grounds upon which its ruling was based, and the final decree will be affirmed.

*Affirmed.*