KING LAND CORPORATION

v.

BOARD OF SUPERVISORS

OF KING AND QUEEN COUNTY, et al.

No. 0765-86

Decided August 18, 1987

COUNSEL

Thomas E. Spahn (Robert H. Patterson, Jr., Robert E. Payne; McGuire, Woods & Battle; John E. Hamilton, Jr., on brief), for appellant.

L. B. Cann, III (George B. Little, James K. Cluverius, Timothy M. Kaine; Little, Parsley & Cluverius, P.C.; John L. Mitchell, Jr., on brief), for appellee.

OPINION

**COLE, J.** — This is an appeal from a decision of the Circuit Court of King and Queen County holding that the appellant's permit to operate a solid waste, nonhazardous landfill was invalid. Two central issues are raised on appeal: (1) whether the circuit court erred in finding that, because the Board of Health failed to promulgate certain regulations pursuant to Code § 32.1-182, King Land's permit to operate a landfill was invalid; and (2) assuming that the Board of Health should have promulgated the regulations, did the circuit court err in cancelling King Land's permit. We reverse the decision of the circuit court.

On December 9, 1985, King Land applied to the State Department of Health for a permit for a 400 ton per day landfill on a 120 acre site in King and Queen County. The application process was completed and on December 24, 1986, King Land obtained a permit to operate a solid waste, nonhazardous landfill. At the time the permit was issued, the financial responsibility regulations required under Code § 32.1-182 had not been adopted. The permit contained no requirement that King Land demonstrate its financial responsibility or provide any financial assurances that would have protected the public from the consequences of any abandonment of the landfill.

The Board of Supervisors of King and Queen County learned of the King Land permit in early January, 1986, and filed its petition in the Circuit Court of King and Queen County. The supervisors challenged the validity of the permit based on the Health Commissioner's failure to promulgate and apply financial responsibility regulations required by Code § 32.1-182.

On April 28, 1986, the Department of Health issued an amended permit governing King Land's operation. One of the key features of the revised plan was a letter of credit which King Land agreed to execute. This letter of credit in the amount of $143,500 was designed to assure that public safety would not be compromised should King Land abandon the landfill.

On May 15, 1986, the Board of Supervisors filed a motion for summary judgment in the pending suit. It claimed that the issuance by the Health Commissioner of the King Land permit in the absence of the required financial responsibility regulations constituted an "error of law" under Code § 9-6.14:17, thereby requiring that the permit be "set aside" under Code § 9-6.14:19. Before argument on the summary judgment motion, King Land submitted another proposed letter of credit in which the reference to the absent state regulations was deleted. At the time this second draft letter of credit was proposed, the financial responsibility regulations required under Code § 32.1-182 had still not been promulgated.

The circuit court granted the Board's summary judgment motion and invalidated King Land's permit on June 23, 1986. King Land appeals the entry of summary judgment and requests reversal and remand for a trial on the merits. In its final order, the circuit court specifically remanded the matter to the State Health Commissioner with directions that "no new solid waste landfill permit be issued with regard to the King Land landfill in King and Queen County to King Land . . . until regulations insuring the financial responsibility of solid waste landfill operators are promulgated, adopted and implemented pursuant to Section 32.1-182 of the Code of Virginia."

This appeal focuses upon an interpretation of Code § 32.1-182(A):

The Board shall, no sooner than October 1, 1981, promulgate regulations which ensure that, in the event that a facility for the disposal of solid waste or a facility in which hazardous waste is stored, treated, or disposed is abandoned, the costs associated with protecting the public health and safety from the consequences of such abandonment may be recovered from the person abandoning the facility.

King Land contends that the statute is plain and unambiguous and leaves no room for construction by the court. It argues that the General Assembly directed the Board of Health to promulgate financial responsibility regulations; it directed that this could not be done before October 1, 1981; but, it did not specify a deadline when the regulations had to be promulgated. Continuing, King Land reasons that the General Assembly did not condition the issuance of permits upon the promulgation of the regulations. Therefore, it argues that the trial court should not have ignored the General Assembly's conscious decision not to include a deadline in Code § 32.1-182(A).

The Board of Supervisors takes the opposite position. Count two of their petition, which forms the basis for the issue in this appeal, contains the following allegation:

> [F]or a number of years Defendant State Board of Health has been obligated pursuant to the provisions of § 32.1-182 . . . to promulgate and implement regulations ensuring that, in the event a solid waste disposal facility is abandoned, the costs associated with protecting the public health and safety from the consequences of such abandonment are recoverable from the person or persons abandoning the facility.

The petition further alleges that the "Board of Health has failed, refused and neglected to fulfill these requirements . . . since no [such] regulations . . . [had] been promulgated and implemented." Finally, the supervisors allege that this failure harmed them within the meaning of §§ 9-6.14:16 to 9-6.14:19 of the Administrative Process Act and § 8.01-184 *et seq.*, and that the permit issued to King Land should be declared invalid as unlawfully issued.

A brief history of the solid waste disposal statutes will aid in the understanding of the present problem. Although similar but less complex laws have been in existence for at least thirty years, we begin with the situation as it existed about fifteen years ago. The 1970 session of the General Assembly adopted Code § 32-9.1 as follows:

> § 32-9.1 *Solid waste disposal.* - The Board shall regulate and prescribe the method or methods of disposition of gar-

bage, refuse and other solid wastes or any combination thereof in this State to be utilized by each county, city and town in the State. On or before January 1, 1972, each county, city and town of this State upon written request by the Board when in its opinion such county, city or town has not provided for proper disposition of its solid wastes shall submit to the Board a plan in a form to be prescribed by the Board, setting forth its plan for garbage and all other solid wastes disposal, which plan shall include the cost, the proposed method of financing, the site or sites to be used and the overall changes in such plan anticipated for the ensuing twenty years. Each county's plan must include the facilities to be used by all towns located therein. Any combination of cities, counties and towns may submit a regional plan in lieu of an individual plan.

1970 Va. Acts c. 645. Based upon the broad general powers granted under this section, the Department of Health adopted Rules and Regulations of the Department of Health, effective April 1, 1971. These Rules and Regulations continued in force to at least October 1, 1979, when Code § 32-9.1 was repealed. The Rules and Regulations provided that each person who operated a disposal system had to apply for a permit. When, upon review of the application, the Health Commissioner determined that the proposed design met the requirements of the regulations, a permit to proceed with construction, alteration and/or operation was issued. The Rules and Regulations also provided that it was unlawful for any person to construct or operate a solid waste system unless a valid permit was obtained from the Health Commissioner for each facility in the name of a specified person at each specific location.

At its regular session of 1974, the General Assembly directed the Code Commission to study Title 32, and to report its findings in the form of a recodification of that title. In December of 1978, the Commission made its report to the Governor and the General Assembly and the proposed revision of Title 32 was adopted by the 1979 General Assembly as Chapter 711 of the Acts of 1979. Effective October 1, 1979, Title 32 of the Code was repealed and Title 32.1 was enacted in lieu thereof.

The recodification of Title 32 is commented upon in a Report of the Solid Waste Commission to the Governor and the General Assembly of Virginia (1979 House and Senate Documents, Vol. 1, Senate Document No. 29). It reports:

> The Virginia Code Commission is currently in the process of recodifying Title 32 of the Code of Virginia relating to health. A new chapter, the Solid and Hazardous Waste Management Act, is being proposed in order to bring the State into compliance with the provisions of the Federal Act including rules and regulations to be promulgated by the Federal Environmental Protection Agency. The Solid Waste Commission, the Department of Health, Code Commission and Environmental Protection Agency (hereafter referred to as EPA) have reviewed the draft of the proposed legislation which will be considered by the General Assembly for approval during the 1979 Session.

We are involved in this case with an interpretation of Code §§ 32.1-177 through 32.1-186 in effect at the date of the summary judgment order on June 23, 1986. Code § 32.1-178 defines the powers and duties of the State Board of Health. Broad and extensive powers and duties are granted to the Board to exercise general supervision and control over solid and hazardous waste management activities. The Board is authorized to develop and keep current a solid and hazardous waste management plan, and to promulgate such regulations as may be necessary to carry out its powers and duties and the intent of Title 32.1 and the federal acts.

The primary focus of our concern is with Code § 32.1-182(A) involving financial responsibility regulations for abandoned facilities. This section contains a rather unusual provision. It provides that *no sooner than October 1, 1981*, the State Board of Health shall promulgate regulations which ensure that in the event a facility for the storage of solid waste is abandoned, the costs associated with protecting the public health and safety from the consequences of abandonment may be recovered from the person abandoning the facility.

Paragraph C of Code § 32.1-182 provides further details concerning formulation of the regulations. It provides that *"[n]o*

*sooner than October 1, 1980*, and *no later than March 1, 1981*, the Board shall make available for public hearing and comment an initial draft of such regulations." (emphasis added). Thus, the initial draft was to be made available between October 1, 1980 and March 1, 1981. The parties have agreed that this was done. It is obvious that the General Assembly then provided a seven month period between March 1, 1981, and October 1, 1981, for public hearings and public comment upon the regulations before they could go into effect but "no sooner than October 1, 1981."

Although the time period for the initial draft of the regulations was complied with, the regulations were never promulgated. In 1984 the General Assembly amended Code § 32.1-182, yet did nothing to specify a deadline by which the regulations had to be promulgated or to revoke the Commissioner's power to issue permits.

In the 1986 session, the General Assembly rewrote and recodified the provisions of the Solid and Hazardous Waste Management laws. It adopted the Virginia Waste Management Act, which created a Department of Waste Management as the successor to the Department of Health. *See* Code § 10-268. Code § 32.1-182 was rewritten as Code § 10-273. The new section, Code § 10-273(A), contains no dates before or after which the Board of Health or the Department of Waste Management must promulgate these regulations. Thus, the General Assembly again took no action to specify a deadline for the promulgation of financial responsibility regulations.

In the record is an affidavit of William F. Gilley, Director of the Division of Solid and Hazardous Waste Management of the Department of Health. He states that the initial draft of financial responsibility requirements for solid waste management facilities was developed and shared with members of the public in the spring of 1981. The regulations were never promulgated because of the difficulty for facility operators to obtain proper financial assurances. He states that Virginia intended to mirror federal regulations to aid in national uniformity. However, because of the national problem in obtaining financial assurances, the United States Environmental Protection Agency had not promulgated financial responsibility regulations.

Gilley reports that from October 1, 1981, through December 31, 1984, the Department of Health issued thirty-three permits to privately owned solid waste disposal facilities. From January 1, 1984, through December 31, 1985, forty permits were issued to privately owned solid waste disposal facilities.

We find that Code § 32.1-182(A) is clear and unambiguous. The General Assembly did not specify a deadline by which the Department of Health was required to promulgate the financial responsibility regulations. The absence of a deadline makes it clear that the General Assembly never intended to impose such a time limitation upon the agency. The past history of the statute and the subsequent amendments to it support the position of King Land that the General Assembly never intended to fix a time limitation for the promulgation of the financial responsibility regulations. Therefore, we reject the argument that the statute requires the agency to promulgate the regulations within a reasonable time as set by the courts.

The Board of Supervisors contends that the Department of Health had no authority to issue permits until such time as the financial responsibility regulations were, in fact, promulgated. We also reject this argument. Prior to the recodification of Title 32, the Department of Health issued permits and had rules and regulations upon which they operated. The recodification did nothing to disturb this procedure. The 1979 Acts of Assembly, Ch. 711, provide:

2. That the regulations of the State Board of Health . . . in effect on the effective date of this act shall continue in effect to the extent that they are not in conflict with this Act and shall be deemed to be regulations promulgated under this Act.

This transitional provision allows the old procedures under Title 32 to continue. The Department of Health did have operational rules and regulations providing for the issuance of permits; but, the old law had no provisions for financial responsibility regulations. Since the General Assembly did not require any deadline for the promulgation of financial responsibility regulations, none were required, and the issuance of permits under the previous rules and regulations was continued under the transitional provi-

sions of the Act. Furthermore, the State Board of Health, under the broad power and duties section, Code § 32.1-178, has inherent authority to grant permits indicating compliance with the rules and regulations of the Board.

Because the Department of Health issued permits prior to the 1979 recodification of Title 32, and has issued seventy-three permits under the authority of Title 32.1, and because the General Assembly is presumed to be aware of the issuance of these permits, and after a period of seven years is presumed to know that no financial responsibility regulations have been issued under Code § 32.1-182(A), we must presume that the General Assembly was aware of and in agreement with these practices.

The elementary rule of statutory interpretation is that the construction accorded a statute by public officials charged with its administration and enforcement is entitled to be given weight by the court. The legislature is presumed to be cognizant of such construction. When it has long continued without change, the legislature will be presumed to have acquiesced therein.

*Peyton v. Williams*, 206 Va. 595, 600, 145 S.E.2d 147, 151 (1965); *see Hudson v. Arthur Treachers*, 2 Va. App. 323, 326, 343 S.E.2d 97, 99 (1986); *Dublin Garment Co. v. Jones*, 2 Va. App. 165, 167, 342 S.E.2d 638, 639 (1986); *Baskerville v. Saunders Oil Co.*, 1 Va. App. 188, 193, 336 S.E.2d 512, 514 (1985); *see also Lee v. Virginia Employment Commission*, 1 Va. App. 82, 85, 335 S.E.2d 104, 106 (1985).

For the foregoing reasons, we hold that the trial court erred in granting summary judgment in this case. We vacate the summary judgment award and remand the case to the trial court for further proceedings upon the merits of the case.

*Vacated and remanded.*

Keenan, J., concurred.

Benton, J., dissenting.

Although the General Assembly mandated that the State Board of Health "shall . . . promulgate regulations" governing financial

responsibility for owners of waste dumps in order to protect "the public health and safety," the majority opinion concludes that the Board had the discretion to delay indefinitely the promulgation of the regulations and could lawfully issue a permit six years from the passage of the act despite its failure to promulgate regulations. I respectfully disagree.

In 1979 the General Assembly delegated to the State Board of Health broad authority to promulgate regulations necessary to govern solid and hazardous waste management. Code § 32.1-178. At the same time the General Assembly specifically stated its concern for the need to "insure that, in the event that a facility for the disposal of solid waste or a facility in which hazardous waste is stored, treated, or disposed is abandoned, the costs associated with protecting the public health and safety from the consequences of such abandonment may be recovered from the person abandoning the facility." Code § 32.1-182(A). To that end the Board was given an express mandate to begin the process of promulgating regulations responsive to the General Assembly's concerns. Code § 32.1-182(C) explicitly and uncharacteristically commanded that the Board "shall make available for public hearing and comment an initial draft" of the regulations "[n]o sooner than October 1, 1980, and no later than March 1, 1981." The process was to culminate in accordance with the unambiguous command of Code § 32.1-182(A) that "[t]he Board *shall* no sooner than October 1, 1981, promulgate" the final financial responsibility regulations. (emphasis added).

I disagree with the view stated in the majority opinion that "[t]he absence of a deadline makes it clear that the General Assembly never intended to impose . . . a time limitation on the agency." By expressly requiring the Board to issue draft regulations and by providing a specified and limited period of time for public hearing and comment on the draft regulations, the General Assembly emphatically expressed its intent that the Board was to proceed with dispatch. The statute leads necessarily to the conclusion that the final regulations were to be promulgated "no sooner than October 1, 1981" but certainly within a reasonable time period subsequent to the statutorily mandated public hearing and comments on the initial draft.

The directives to issue initial draft regulations for comment and hearings and to promulgate the final regulations were made

mandatory by the use of the word "shall" in subsections (A) and (C) of the statute. *See, e.g., Schmidt v. City of Richmond*, 206 Va. 211, 218, 142 S.E.2d 573, 578 (1965). The Board had no discretion to elect to forgo enacting the regulations. *See Andrews v. Shephard*, 201 Va. 412, 414, 111 S.E.2d 279, 282 (1959). Therefore, it is a *non sequitur* to acknowledge, as the majority does, the duty of the Board to comply with the statute, but then to assert that the Board had the discretion not to act or to act at any point without time constraints. The holding of the majority opinion vitiates the command of the statute that the Board "shall" promulgate the regulations and, thus, renders the statute meaningless. This is a result to be avoided in the construction of statutes. *See, e.g., Jones v. Conwell*, 227 Va. 176, 181, 314 S.E.2d 61, 64 (1984); *Norwood v. City of Richmond*, 203 Va. 886, 891, 128 S.E.2d 425, 429 (1962). "[E]very act of the legislature should be read so as to give reasonable effect to every word and to promote the ability of the enactment to remedy the mischief at which it is directed." *Jones v. Conwell*, 227 Va. at 181, 314 S.E.2d at 64; *see also Andrews v. Shephard*, 201 Va. at 414, 111 S.E.2d at 281. The view of the majority opinion is premised upon the observation that "[t]he literal language employed by the General Assembly does not specify any deadline by which the Department . . . was required to promulgate the financial responsibility regulations." Although I concur that the statute does not contain a specific "deadline" for promulgating the final regulations, that concession does not resolve the question whether the Board was required to discharge its mandate within a reasonable time. Where, as here, a public official is charged by statute to perform a duty, but the statute is silent as to the express time by which the duty must be performed, there is an implicit requirement that its mandate be fulfilled within a reasonable time. *See Andrews v. Shepherd*, 201 Va. at 416, 111 S.E.2d at 282; *see also State v. Pohl*, 8 N.W.2d 227, 231 (Minn. 1943).

The fact that Code §32.1-182(A) does not contain an explicit deadline by which the Board must promulgate final regulations does not lead unerringly to the conclusion that the Board is free to never act or to act whenever it wishes regardless of how far into the future that may be. The statute quite simply reflects a recognition of the realities of the process of promulgating administrative regulations. An administrative agency frequently and of necessity requires a reasonable period of time following public

hearings and comment, both of which often require time consuming and extensive revisions of the initial drafts, before final regulations may be promulgated. *See* Code §§ 9-6.14:7.1 to 9-6.14:9.4 (the Administrative Process Act requirements for promulgating regulations).

Furthermore, it is axiomatic that where a literal interpretation of a statute conflicts with the manifest purpose and intent behind the enactment, the literal interpretation "must yield to a reasonable and fair interpretation to be gathered from the context." *City of Virginia Beach v. Virginia Electric & Power Co.*, 218 Va. 346, 350, 237 S.E.2d 164, 166 (1977)(quoting *Buzzard v. Commonwealth*, 134 Va. 641, 653, 114 S.E. 664, 667 (1922)). Here, a literal interpretation of the statute would vest in the Board the authority to promulgate the required regulations at any time. The effect of such an interpretation is to allow the Board to avoid promulgation completely by simply asserting the lack of a statutory deadline. That such a result would flow from the majority's holding is evidenced by the fact that seven years have elapsed since the statute was enacted with no regulations having been promulgated by the Board. To effectuate the General Assembly's manifest intent, the statute should be read to require the Board to fulfill its mandate to promulgate regulations within a reasonable time.

I find unpersuasive the majority opinion's suggestion that the General Assembly has acquiesced in the Board's disregard of its statutory mandate. In 1986 the General Assembly divested the Board of its control over solid and hazardous waste management and charged the Virginia Waste Management Board with regulating that area, including promulgation of regulations for financial responsibility for abandoned facilities. *See* Code § 10-263 *et seq.* That legislative action does not suggest that the General Assembly acquiesced in the Board's failure to follow the law. Furthermore, any suggestion of acquiescence must be closely scrutinized. An administrative agency may not divest itself of the duty to comply with a statutory directive in order to accomplish what it deems to be a more desirable framework within which to operate. *Safeway Stores v. Milk Commission*, 197 Va. 69, 77, 87 S.E.2d 769, 774 (1955).

The failure of the Board to promulgate the regulations within a reasonable time rendered King Land's permit invalid.

Where a . . . case decision is found . . . to be not in accordance with law under § 9-6.14:17, the court shall suspend or set it aside and remand the matter to the agency for such further proceedings if any, as the court may permit or direct in accordance with law.

Code § 9-6.14:19. The Board's grant of a permit to King Land was a "case decision" as that term is statutorily defined:

"Case" or "case decision" means any agency proceeding or determination that, under laws or regulations at the time, a named party as a matter of past or present fact, or of threatened or contemplated private action, either is, is not, or may or may not be (i) in violation of such law or regulation or (ii) in compliance with any existing requirement for obtaining or retaining a license or other right or benefit.

Code § 9-6.14:4(D); *see also State Board of Health v. Godfrey*, 223 Va. 423, 433, 290 S.E.2d 875, 880 (1982). By operation of Code § 9-6.14:17, the grant of the permit was not in accordance with law because it was not in "compliance with statutory authority . . . as provided in the basic law."

Code § 32.1-182(A) specifically required that all permits to operate a solid waste disposal facility be issued subject to the operator's financial accountability for "the costs associated with protecting the public health and safety from the consequences of . . . abandonment." Accordingly, the issuance of the permits to King Land in the absence of regulations was not in compliance with the basic law under which the Board is mandated to act in issuing permits.

The evidence supports the circuit court's findings that five years beyond October 1, 1981, was an unreasonable delay in promulgating regulations to protect the public safety and welfare and that the Board's failure to promulgate the regulations was a breach of its obligation to provide for "the protection, improvement and preservation of the public health and of the environment." Code § 32.1-2. Therefore, I would affirm the trial court's decision granting summary judgment in favor of the Board of Supervisors.