## Richmond

### SAVILLE, CLERK, V. VIRGINIA RAILWAY AND POWER CO.

#### January 16, 1913.

1. TAXATION—*Tax on Mortgage—Supplemental Mortgage—Same Issue of Bonds—Additional Tax.*—Where .a deed of trust to secure an issue of bonds therein mentioned conveys to the trustee not only all the real and personal property that the grantor then owns, but all that it may thereafter construct or acquire, and contains a covenant to thereafter convey the latter, upon request, and subsequently the grantor, upon request, executes to the same trustees a supplemental deed of trust conveying such after-acquired property, subject to the terms and provisions of the original deed of trust, and also of the supplemental deed of trust, the tax required for recording the supplemental deed is the same as that required for recording the first deed, although the tax required for recording the first deed was paid, and no bonds were authorized to be issued or secured by the supplemental deed, other than, or in addition to, the bonds secured by the first deed. The statute declares that "on deeds of trust or mortgages the tax shall be upon the amount of bonds or other obligations secured thereby" and the supplemental deed of trust comes under this description. The two deeds are not merely parts of the same instrument, but are wholly separate and distinct. The first is complete in itself, and while the second is supplemental to the first and conveys only the legal title to property, the beneficial interest in which passed by the first, it is none the less a mortgage, or conveyance of property upon condition, as security for the payment of a debt or performance of a duty and hence subject to the tax on such instruments. It is immaterial that the great bulk of the property was conveyed by the first deed, as the tax is regulated by the amount of the bonds or other obligations secured thereby.

2. TAXATION—*Record of Mortgage—Privilege—Power of Legislature—Case at Bar—Additional Mortgage—Double Taxation.*—The tax on the recordation of a deed is not a tax upon property, but upon a civil privilege of which anyone may avail himself or not, as he pleases, and the power of the legislature to impose it and fix the amount thereof is well nigh unlimited, so long as the

classification is reasonable. The constitutional limitation upon the power of the legislature to impose such tax is that it shall be uniform upon the subjects of such class. In the case at bar each mortgage upon which the tax is demanded is in itself complete, and the second is not to be treated as merely supplemental to the first; for the second, in conveying the legal title to property as to which the trustee in the first mortgage had only on equitable title, has strengthened and increased the security of the bondholders and accomplished the end for which it was designed, which was the better to secure the holders of the bonds referred to in the first mortgage, and was in addition to the terms and conditions of the first and refunding mortgage, and not in derogation thereof, and it was proper to charge the same tax on the second mortgage as on the first. This is not double taxation.

3. STATUTES—*Construction—Spirit of the Law.*—In construing statutes it is the duty of the court to give to the words used their usual and ordinary signification, and having thus ascertained the legislative intent to give effect to it, unless it transcends the legislative power as limited by the Constitution. The letter of the law is not to be wrested from its plain meaning in order to conform to what is conceived to be its spirit.

Error to a judgment of the Circuit Court of the city of Richmond on a petition for a writ of mandamus. To a judgment awarding the writ the defendant assigns error.

*Reversed.*

The opinion states the case.

*Samuel W. Williams, Attorney General,* and *Richard B. Davis,* his assistant, for the plaintiff in error.

*Henry W. Anderson* and *Thomas B. Gay,* for the defendant in error.

KEITH, P., delivered the opinion of the court.

The Virginia Railway and Power Company filed its petition in the Circuit Court of the city of Richmond, praying a mandamus against Charles O. Saville, clerk of the Chan-

cery Court of the city of Richmond, to compel him to place upon the records of his office an agreement between the Virginia Railway and Power Company and the Equitable Trust Company of New York.

The cause having been matured for hearing upon the petition and exhibits filed with it, the demurrer and answer of the defendant, and upon the stipulation of counsel as to certain facts in writing, the circuit court entered a judgment awarding the writ as prayed for, and the defendant obtained a writ of error to that judgment.

The facts are as follows: The Virginia Railway and Power Company, in order to secure an issue of fifteen million dollars face value of first and refunding mortgage bonds, then or thereafter to be issued, executed and delivered to The Equitable Trust Company of New York, as trustee, a certain deed of trust or trust indenture, bearing date the 1st day of July, 1909, wherein and whereby the said company granted and conveyed all of its real and personal property, rights, privileges and franchises then owned or thereafter acquired (subject only to certain exceptions in said indenture specified) in trust for the security of the payment of the principal and interest of said bonds as the same might become due and payable, and upon the trusts and subject to the conditions and limitations as set out at length in said trust indenture. After proper execution and acknowledgment this deed of trust was presented to the clerk of the Chancery Court of the city of Richmond and recorded, and the tax of fifteen thousand dollars, as prescribed by section 13 of the Virginia statute, commonly known as the tax bill, as well as all recording fees, were duly paid thereon, the said deed of trust indenture having been so admitted to record on the 22d day of July, 1909.

By the terms of this deed the defendant in error granted and conveyed unto the trustee therein named not only the

property, real and personal, rights, privileges and franchises owned or enjoyed by it at the date of delivery of the indenture, but by section 12 of the granting clause of said deed of trust it was particularly provided as follows: "All of the property, real and personal, including stocks, bonds and securities, rights, privileges, franchises and immunities of every kind or character which may hereafter be constructed or acquired by the railway company in any manner whatsoever" (subject only to certain exceptions not material to this appeal).

By the terms of this trust indenture provision was only made for the immediate issue of bonds secured thereby of an aggregate face value of seven million, five hundred and forty-two thousand dollars, the remainder of said bonds being reserved under the terms of the trust, to be issued thereafter from time to time in the manner and for the purposes set forth in the said deed.

By the terms of article 4, section 10, of said indenture it was provided as follows: "The railway company covenants and agrees that whenever required by the trustee, it will grant, convey, confirm, assign, transfer, and set over unto the trustee the estate, right, title and interest of the railway company in or to all real and personal estate, corporate rights and franchises which, in any way or manner, it shall acquire as appurtenant to, or for the use of, the railways hereby mortgaged, and also it will do, execute, acknowledge and deliver, or it will cause to be done, executed, acknowledged and delivered, all and every such further acts, deeds, transfers and assurances for the better assuring, conveying and confirming unto the trustee all and singular the premises, estates and property hereby conveyed, or intended to be as the trustee or the holder of a majority in amount of the bonds issued and outstanding hereunder shall reasonably require for better accomplishing the provisions and purposes of this indenture and for

securing payment of the principal and interest of the bonds, intended to be hereby secured."

Subsequent to the execution and recordation of the deed of trust aforesaid, and prior to April 10, 1911, the railway company had purchased and acquired certain property, real and personal, suitable for its objects and purposes.

Desiring to issue and dispose of certain of the bonds reserved under the trust indenture aforesaid, for the purposes therein stated, and at the request of the trustee, the railway company executed and delivered to The Equitable Trust Company of New York, trustee, a supplemental deed or trust indenture, by which there was granted to said trustee, subject to the terms and provisions of the original deed of trust, and also of said supplemental indenture, the real estate and other property which had been so acquired by the said railway company subsequent to the date of said original mortgage, but the legal title to which had not been vested in said trustee by deeds, as contemplated by said original mortgage under the covenant of further assurance.

The supplemental indenture, bearing date the 10th day of April, 1911, was duly executed by the railway company and the trustee therein named, and having been acknowledged in the manner prescribed by the laws of this State for record, was presented to the clerk of the Chancery Court of the city of Richmond, with the request that the same be recorded. The amount of the clerk's fees for recording the same, to-wit, $6.25, was duly tendered to Charles O. Saville, clerk of the said court, on June 8, 1911, but the said clerk declined to record the supplemental indenture unless and until the railway company should pay a tax of fifteen thousand dollars thereon, in addition to the tax of fifteen thousand dollars already paid on the original indenture bearing date July 1, 1909.

No bonds were authorized to be issued or secured by the supplemental instrument other than, or in addition to, the

bonds secured by the original indenture.    The railway
company, therefore, having paid a tax of fifteen thousand
dollars upon the total amount of bonds or other obligations
secured by the original deed of trust bearing date July 1,
1909, declined to pay a further tax upon the amount of
bonds or other obligations secured alike by the said origi-
nal and supplemental trust indenture, and filed its petition
in the Circuit Court of the city of Richmond, praying that
a writ of mandamus be awarded it, compelling and requir-
ing the clerk of the Chancery Court of the city of Richmond
to record the supplemental indenture without the payment
of further recording tax.

Section 13 of the Virginia tax bill provides that "on
deeds of trust or mortgages the tax shall be upon the
amount of bonds or other obligations secured thereby."

It is contended by the defendant in error that the sup-
plemental deed which was offered for recordation was not
a deed of trust or mortgage within the terms of this law;
its position being that the various provisions of the sup-
plemental instrument, read in the light of the after-acquired
property clause and the covenant for further assurance,
contained in the original indenture, were but parts of the
same instrument, constituting together the deed of trust
or mortgage securing the company's bonded indebtedness,
upon the total amount of which a tax was imposed and
paid in July, 1909, when the original trust indenture was
duly admitted to record.

That the mortgage of the 1st of July, 1909, was in itself
a complete instrument for the purposes for which it was
intended, cannot be denied.    The second mortgage, it is
true, only conveyed the legal title to property which was
embraced in the first deed in its after-acquired property
clause and the covenant which it contained of further
assurance; but it is none the less a mortgage—that is to
say, a conveyance of property upon conditions, as security

for the payment of a debt or performance of a duty. In the granting clause of the supplemental deed it is said that this property therein referred to is conveyed, "in order better to secure the payment of all the bonds heretofore issued and which shall hereafter be issued under said mortgage"—that is to say, the original indenture; and it is further declared that "The object, purpose and intent of this agreement"—that is to say, the second mortgage—"is the better to secure the holders of the bonds referred to herein and in the first and refunding mortgage herein referred to and any future holders of said bonds at any time outstanding, and the terms, agreements, covenants and conditions hereof are, and are intended, to be in addition to the terms and conditions of said first and refunding mortgage and not in derogation thereof, and all of the provisions of said first and refunding mortgage, except to the extent that the same are herein abrogated or modified, shall be deemed to remain in full force and effect  *  *  * . Nothing in this agreement contained shall be deemed or construed in any way to diminish, remove or impair any of the security, rights or privileges of said present or future bondholders, or in any way impair, diminish, remove or reduce any of the obligations, covenants or agreements on the part of the railway company in said first and refunding mortgage contained."

The object, purpose and intent of this agreement being the better to secure the holders of the bonds to which it refers, the result is accomplished by the execution of the supplemental deed, which vests in the trustee therein named the legal title to the after-acquired property, with respect to which only an equity had passed as security for the bonds therein provided for by force of the deed of July, 1909, known as the first mortgage. The fact that the great bulk of the property conveyed for the security of the debt named passed to and vested in the trustee by force of

the first mortgage, is of no avail, for the tax is not upon the value of the property conveyed, but upon the amount of the bonds secured. See Acts of Assembly, 1910, p. 488, ch. 315, sec. 13, which declares that on deeds of trust or mortgage the tax shall be upon the amount of the bonds or other obligations secured thereby.

That the instrument is in form and effect a mortgage; that it transfers property to a trustee for the better security of a debt is apparent from an inspection of the paper itself, as appears from the extract we have made from it, and brings the instrument clearly within the operation of our tax law.

But it is contended that to impose a tax upon the recordation of the supplemental instrument would lay upon the bonds or other obligations secured thereby the double duty of contributing twice to the same burden, and would be repugnant to that section of the Constitution which provides that "all taxes, whether State, local or municipal, shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws;" that to require the payment of the fee for the registration of the second mortgage would be to impose a doubel tax, citing Cooley on Taxation, vol. 1, p. 394, where it is said: "By double taxation in this sense is understood the requirement that one person, or any one subject to taxation, shall directly contribute twice to the same burden, while other subjects of taxation, belonging to the same class, are required to contribute but once."

In *Pocahontas Collieries Co.* v. *Com'th,* 113 Va. 108, 73 S. E. 446, it was held that the tax upon the recordation of a deed is not a tax upon property, but upon a civil privilege; and that the power of the legislature to impose a tax upon such a privilege, to fix the amount thereof, and to classify the subjects upon which the tax is imposed is well-

nigh unlimited, so long as the classification is reasonable; and that the only constitutional limitation upon the power of the legislature to impose the tax is that it shall be uniform upon the subjects of each class.

As we have already seen, each of the two mortgages is in itself complete, and the second mortgage is not to be treated as being merely supplemental to the first, because in conveying the legal title to property as to which the trustee in the first mortgage had only an equitable title, it has strengthened and increased the security of the bondholders and accomplished the end for which it was designed, which was the better to secure the holders of the bonds referred to in the first mortgage, and was in addition to the terms and conditions of the first and refunding mortgage, and not in derogation thereof.

No one is requiring the Virginia Railway and Power Company to spread this indenture upon the records. It is free to do as it pleases in that respect. It would not have executed the mortgage in the first place but that it desired, for its own advantage, to furnish the best security it could provide for the payment of its bonds and thereby to enhance their value upon the market. In furtherance of this purpose it sought the privilege of having its second mortgage spread upon the records of the Chancery Court of the city of Richmond, and for that privilege the State has seen fit to impose the tax which the clerk of that court demanded.

It is contended that the construction insisted upon by the plaintiff in error is violative of the spirit or reason of the law. The argument would seem to concede that the contention is within the letter of the law. We hear a great deal about the spirit of the law, but the duty of this court is not to make law, but to construe it; not to wrest its letter from its plain meaning in order to conform to what is conceived to be its spirit, in order to subserve and pro-

mote some principle of justice and equality which it is claimed the letter of the law has violated.  It is our duty to take the words which the legislature has seen fit to employ and give to them their usual and ordinary signification, and having thus ascertained the legislative intent, to give effect to it, unless it transcends the legislative power as limited by the Constitution.

For these reasons we are of opinion that the circuit court erred in awarding the mandamus, and that its judgment must be reversed.

*Reversed.*