# Richmond

Maggie H. Temple and Others v. City of Petersburg.

March 13, 1944.

Record No. 2742.

Present, Campbell, C. J., and Hudgins, Gregory, Eggleston and Spratley, JJ.

The opinion states the case.

*William Old*, for the appellants.

*J. Gordon Bohannan* and *Willis W. Bohannan*, for the appellee.

GREGORY, J., delivered the opinion of the court.

The appellants, who were the complainants in the court below, filed their bill in equity against the city of Petersburg, praying that it be restrained and enjoined from using a tract of 1.01 acres of land acquired by it in 1942 for cemetery purposes. This plot of land adjoined Peoples Memorial Cemetery, which had been established and used as a cemetery for more than one hundred years.

The court below temporarily restrained the city from using the 1.01-acre tract as an addition to the cemetery. Later the city filed its answer to the bill and, by consent, the cause was set for hearing upon the bill, the answer, and a stipulation of counsel. The court dissolved the injunction and refused the prayer for relief.

Code, sec. 56 (Michie 1942) provides in part as follows:

"No cemetery shall be hereafter established within the corporate limits of any city or town; nor shall any cemetery be established within 250 yards of any residence without the consent of the owner of the legal and equitable title of such residence; * * * "

We are called upon to ascertain the proper meaning of the statute, and to decide whether or not it has been violated by the city. Specifically the controversy concerns the meaning to be given to the word, "established", used therein. The appellants maintain that under the statute the enlargement of an existing cemetery, such as is sought here, in reality is the establishment of a cemetery, while the appellee contends that to enlarge an existing cemetery is not the establishment of a cemetery and, therefore, constitutes no violation of the statute.

In 1916, John D. Temple, the predecessor in title of the appellants, acquired lot number 169 in the city of Petersburg, and erected a residence thereon. In 1917 he acquired the adjoining lot, number 168. Upon his death, intestate, in 1921, this real estate descended to the appellants, who have maintained a residence thereon since that time. The residence faces St. Andrews street, and is bounded on one side by Talliaferro street.

At the time that John D. Temple erected his residence, Peoples Memorial Cemetery was already established on a tract of eight acres, a portion of which extended to within 80 feet of his residence. Between the residence and the cemetery there is Talliaferro street, which is 30 feet wide, and a vacant strip of land belonging to the city of Petersburg, 50 feet in width. Upon this vacant strip of land there is a number of graves, the nearest of which is 74 feet east of the residence.

The cemetery tract on one side adjoined Crater road. It became necessary for the city to widen and improve Crater road. In order to do so, a strip of the cemetery property was required to be taken by the exercise of eminent domain. Many bodies had been interred upon this strip, and it is necessary to exhume them in order to complete the improvement of the road. The city, desiring to provide a proper place to re-inter these bodies, acquired the tract of 1.01 acres of land on the south side of St. Andrews street adjoining the cemetery tract. The 1.01-acre tract so acquired lies directly across St. Andrews street in front of the

appellants' residence, and 70 feet distant therefrom at the nearest point. It is the plan of the city of Petersburg to re-inter the bodies in this proposed addition to the cemetery. Afterwards, the city plans to convey the said tract to trustees to be appointed by the hustings court of the city in order that it may be incorporated in the Peoples Memorial Cemetery and be made an integral part thereof.

The principal and determinative issue to be determined in this cause is whether or not the proposed enlargement of Peoples Memorial Cemetery, by the additional 1.01-acre tract, is prohibited by section 56 of the Code.

The appellants most strongly contend that the word, "established", as used in the statute, means "located", and that the evil intended to be inhibited is the location of a cemetery in a city or town upon ground not previously dedicated for cemetery purposes, or the location of a cemetery within 250 yards of a residence, whether by enlargement or otherwise. They contend that the purpose of the statute is to protect residences and lands from the ill effects growing out of close proximity to a cemetery. They further contend that it is unreasonable to say that residences and lands are to be protected against the "establishment" of cemeteries, but are not to be protected against the encroachment or enlargement of existing cemeteries; that the evil created by one is equally as real as that created by the other.

The position of the appellee is that the word, "established", has such a clear and precise meaning that no question of statutory construction arises. That the statute provides that no cemetery shall be "hereafter established" in a city or town, and that this language does not mean that a cemetery already established shall not be hereafter enlarged. To hold otherwise would be not to construe the statute, but in effect, to amend it.

It is elementary that the ultimate aim of rules of interpretation is to ascertain the intention of the legislature in the enactment of a statute, and that intention, when discovered, must prevail. If, however, the intention of the

legislature is perfectly clear from the language used, rules of construction are not to be applied. We are not allowed to construe that which has no need of construction.

If the language of a statute is plain and unambiguous, and its meaning perfectly clear and definite, effect must be given to it regardless of what courts think of its wisdom or policy. In such cases courts must find the meaning within the statute itself. *Fairbanks, etc., Co.* v. *Cape Charles,* 144 Va. 56, 131 S. E. 437; *Hammer* v. *Commonwealth,* 169 Va. 355, 193 S. E. 496; *Woodward* v. *Staunton,* 161 Va. 671, 171 S. E. 590; *South Hill* v. *Allen,* 177 Va. 154, 12 S. E. (2d) 770.

In *Commonwealth* v. *Sanderson,* 170 Va. 33, 195 S. E. 516, we quoted with approval from *Saville* v. *Virginia Ry., etc., Co.,* 114 Va. 444, 76 S. E. 954, 957, this statement of the rule:

" 'It is contended that the construction insisted upon by the plaintiff in error is violative of the spirit or reason of the law. The argument would seem to concede that the contention is within the letter of the law. We hear a great deal about the spirit of the law, but the duty of this court is not to make law, but to construe it; not to wrest its letter from its plain meaning in order to conform to what is conceived to be its spirit, in order to subserve and promote some principle of justice and equality which it is claimed the letter of the law has violated. It is our duty to take the words which the legislature has seen fit to employ and give to them their usual and ordinary signification, and having thus ascertained the legislative intent, to give effect to it, unless it transcends the legislative power as limited by the Constitution.' "

In *Fairbanks, etc., Co.* v. *Cape Charles, supra,* the court says: "Under the distribution of powers by the Constitution, it is the function of this court to interpret and not to enact laws. The latter power belongs to the legislature alone."

The word, "established", is defined in Webster's New International Dictionary, second edition, 1936, thus: "To

originate and secure the permanent existence of; to found; to institute; to create and regulate;—said of a colony, a State or other institutions."

Just why the legislature, in its wisdom, saw fit to prohibit the establishment of cemeteries in cities and towns, and did not see fit to prohibit enlargements or additions, is no concern of ours. Certain it is that language could not be plainer than that employed to express the legislative will. From it we can see with certainty that while a cemetery may not be established in a city or town, it may be added to or enlarged without running counter to the inhibition found in section 56. We are not permitted to read into the statute an inhibition which the legislature, perhaps advisedly, omitted. Our duty is to construe the statute as written.

If construction of the statute were necessary and proper in this case, we would be forced to the same conclusion. Even if it be assumed that there is ambiguity in the language in section 56, the legislative history of its enactment and a consideration of Code, sec. 53, a related statute, would remove all doubt as to what the legislature intended by its language in section 56.

Code, sec. 53 affords a complete answer to the question of legislative intent in the use of the word "established" in section 56, for the former section makes a distinction between "establish" and "enlarge" in these words: "If it be desired at any time to establish a cemetery, for the use of a city, town, county or magisterial district, or to enlarge any such already established, and the title to land needed cannot be otherwise acquired, land sufficient for the purpose may be condemned. * * * "

The foregoing language, taken from section 53, completely demonstrates that the legislature did not intend the words "establish" and "enlarge" to be used interchangeably, but that the use of one excluded any idea that it embraced or meant the other. As used, they are mutually exclusive. To enlarge or add to a cemetery is not to establish one within the meaning of section 56.

The language of the statute being so plain and unambiguous, and the intention and meaning of the legislature so clear, we hold that the city of Petersburg has not violated Code, sec. 56, and the decree accordingly should be affirmed.

*Affirmed.*