Andrew REUTHER, Appellant,

v.

TRUSTEES OF the TRUCKING EMPLOYEES OF PASSAIC AND BERGEN COUNTY WELFARE FUND

and

United States of America and Ray Marshall, Secretary of Labor, (Defendant-Intervenors in D. C.).

Appeal of REUTHER MATERIAL CO., INC.

No. 77–1986.

United States Court of Appeals, Third Circuit.

Argued March 30, 1978.

Decided April 28, 1978.

---

Brigadier & Margulies, Jersey City, N. J., for appellant; Robert E. Margulies, Jersey City, N. J., on brief.

Franzblau, Falkin & DiMarzio, Newark, N. J., for the Trustees of the Trucking Emp. of Passaic and Bergen County Welfare Fund; Gary L. Falkin, Newark, N. J., of counsel.

Carin Ann Clauss, Sol. of Labor, Washington, D. C., Francis LaRuffa, Regional Sol., New York City, Monica Gallagher, Associate Sol., Washington, D. C., Jonathan L. Goldstein, U. S. Atty., Newark, N. J., Mary S. Calfee, Atty., U. S. Dept. of Labor, Ray Marshall, Plan Benefits Security Division, Washington, D. C., for the United States and the Secretary of Labor.

Jones, Cuccio & Klinger, Hackensack, N. J., for John Ruzila, Peter Ruzila and Ruzila's Exp. Service, Inc., as amicus curiae; Walter H. Jones, III, Hackensack, N. J., Donald G. Koch, Newark, N. J., on brief.

Before ALDISERT, GIBBONS and HIGGINBOTHAM, Circuit Judges.

## OPINION OF THE COURT

ALDISERT, Circuit Judge.

In this appeal we are asked to construe an important provision of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 et seq. The district court determined that a provision of the Act time-barred both the individual appellant, Andrew Reuther, and the corporate appellant, Reuther Material Co., Inc., which is partly owned by the individual appellant, from successfully asserting a claim for the return of contributions mistakenly paid into

a pension fund. The court granted summary judgment in favor of the trustees of the pension fund,[1] holding that the contributions were made by a mistake of fact and the claim for refund is thus barred by 29 U.S.C. § 1103(c)(1)–(2)(A):

> (c)(1) Except as provided in paragraph (2) . . . , the assets of a plan shall never inure to the benefit of any employer and shall be held for the exclusive purposes of providing benefits to participants in the plan and their beneficiaries and defraying reasonable expenses of administering the plan.
>
> (2)(A) In the case of a contribution which is made by an employer by a mistake of fact, paragraph (1) shall not prohibit the return of such contribution to the employer within one year after the payment of the contribution.

Because we hold that these provisions do not bar appellants' claim, we reverse the district court judgment.

## I.

The facts are not in dispute. Andrew Reuther was employed by the Reuther Material Co. as a truck driver from 1947 until 1965. He subsequently served as a managerial employee of the company and is now vice president and part owner. From 1957 until April 2, 1976, the company made contributions on behalf of Andrew Reuther to a pension plan known as the Trucking Employees of Passaic and Bergen County Welfare Fund. The plan is a "defined benefit" plan under 29 U.S.C. § 1002(35), that is, "a pension plan other than an individual account plan", which antedated the effective date of the relevant portions of ERISA, January 1, 1975.

Although Reuther applied for a pension in December 1975, it was not until April 8, 1976, that the trustees denied the application. In justifying the denial, the trustees stated that Reuther was "an integral part of the management" and thus was neither entitled to service credit after 1965, the year he became a managerial employee, nor eligible for a pension. Denied the pension, Reuther demanded the refund of $12,320.12, an amount representing all contributions made by the company for the hours he had worked. The trustees offered him $1,686.22, a sum representing contributions made for the year ending April 5, 1976, but refused to refund the remainder on the ground that the application for the return of the contributions was barred by ERISA § 1103(c)(1)–(2)(A).

## II.

ERISA provides for comprehensive federal regulation of employee pension plans. For the purposes of this case, certain statements of congressional findings and policy declarations assume special significance:

> (a) The Congress finds that the growth in size, scope, and numbers of employee benefit plans in recent years has been rapid and substantial; . . . that despite the enormous growth in such plans many employees with long years of employment are losing anticipated retirement benefits owing to the lack of vesting provisions in such plans; that owing to the inadequacy of current minimum standards, the soundness and stability of plans with respect to adequate funds to pay promised benefits may be endangered; that owing to the termination of plans before requisite funds have been accumulated, employees and their beneficiaries have been deprived of anticipated benefits; . . .
>
> (c) It is hereby further declared to be the policy of this Act to protect interstate commerce, the Federal taxing power, and the interests of participants in private pension plans and their beneficiaries by improving the equitable character and the soundness of such plans by requiring them to vest the accrued benefits of employees with significant periods of service, to meet minimum standards of funding, and by requiring plan termination insurance.

---

1. The trustees' position is also supported by the United States and the Secretary of Labor as intervenor-appellees.

29 U.S.C. § 1001. Thus it is readily apparent that the major concern of Congress was to ensure that *bona fide* employees with long years of employment and contributions realize anticipated pension benefits. Because ERISA is employee-oriented, Congress specifically provided that the assets of a plan "shall never inure to the benefit of any employer". 29 U.S.C. § 1103(c)(1).

The starting point of our analysis is a recognition that two discrete issues confront us on appeal. The first is whether § 1103(c)(1)–(2)(A) applies retrospectively to bar the refund of contributions made before the effective date of the Act. The second issue concerns those contributions made by the corporate appellant after the effective date of ERISA; appellees concede that such an employer is entitled to the return of contributions, but only to the extent a claim is made "within one year after the payment of the contribution." 29 U.S.C. § 1103(c)(2)(A). Although the parties did not treat these as separate issues, we believe that they raise considerations necessitating separate treatment.

### A.

We turn first to the question whether an employer may seek the return of contributions made to a "defined benefit" plan prior to the effective date of the Act on behalf of a named employee whom the trustees later find to be unqualified for pension benefits. The trustees' case stands or falls on the interpretation of one clause in the comprehensive statute: "a contribution which *is* made by an employer [may be returned] to the employer within one year after the pay-

ment of the contribution." (Emphasis added). The provision went into effect January 1, 1975.

The trustees would have us expand the congressionally expressed present tense of the copulative verb, "is", to the past tense, "was", or the present perfect tense, "has been", in order to encompass contributions made prior to the effective date of the Act. We believe that the plain meaning of the statutory language militates against this broad interpretation. Although we heed Learned Hand's admonition "not to make a fortress out of the dictionary", *Cabell v. Markham,* 148 F.2d 737, 739 (2d Cir. 1945), we must, in the Anglo-American tradition, respect Lord Atkinson's venerable advice that "[i]f the language of a statute be plain, admitting of only one meaning, the Legislature must be taken to have meant and intended what it has plainly expressed . . . ." *Vacher & Sons, Ltd. v. London Society of Compositers* [1913] A.C. 107, 121 (House of Lords).[2] Simply put, the use of the present tense "is" indicates that this provision is to apply only to contributions made *after* the effective date of ERISA; if Congress had intended otherwise, it could have stated "In the case of a contribution that is, was, or has been made by an employer".

We find even more formidable support for appellants' case when we examine the entire statutory schema for an understanding of Congress' intention as to acts, omissions or circumstances which arose prior to ERISA's effective date.[3] ERISA's

---

**2.** The Supreme Court addressed this basic tenet of statutory construction in *Caminetti v. United States,* 242 U.S. 470, 485–86, 37 S.Ct. 192, 194, 61 L.Ed. 442 (1917):

It is elementary that the meaning of a statute must, in the first instance, be sought in the language in which the act is framed, and if that is plain, and if the law is within the constitutional authority of the law-making body which passed it, the sole function of the courts is to enforce it according to its terms.

. . . .

Where the language is plain and admits of no more than one meaning, the duty of inter-

pretation does not arise, and the rules which are to aid doubtful meanings need no discussion. . . .

Statutory words are uniformly presumed, unless the contrary appears, to be used in their ordinary and usual sense, and with the meaning commonly attributed to them.

**3.** "It is elementary that the ultimate aim of rules of interpretation is to ascertain the intention of the legislature in the enactment of a statute, and that intention, when discovered, must prevail." *Temple v. City of Petersburg,* 182 Va. 418, 422, 29 S.E.2d 357, 358 (1944).

supersedure provision declares that the Act "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan . . . ," 29 U.S.C. § 1144(a), but it immediately qualifies this proposition with a provision that we believe is most persuasive, if not absolutely controlling, in our quest for congressional intention: "This section shall not apply with respect to any cause of action which arose, or any act or omission which occurred, before January 1, 1975." 29 U.S.C. § 1144(b)(1). This language compels the inference that acts or omissions that occurred prior to the effective date of ERISA are not controlled by the provisions of the Act.

Any doubt as to this reading has been totally dissipated by a recent pronouncement of the Supreme Court in a case involving pre-ERISA activities in a pension plan similar to the one before us: "Because ERISA did not become effective until January 1, 1975, and *expressly disclaims any effect with regard to events before that date,* it does not apply to the facts of this case." *E. I. Malone v. White Motor Corp.,* —— U.S. ——, —— n.1, 98 S.Ct. 1185, 1187 n.1, 55 L.Ed.2d 443 (1978) (emphasis added). *See also Bacon v. Wong,* 445 F.Supp. 1189 (N.D. Cal. 1978). The contributions of Reuther Material Co. before January 1, 1975, were surely "events before that date". Accordingly, we are satisfied that the district court erred in accepting the appellees' contention that § 1103(c)(1)–(2)(A) is relevant to a refund of contributions made prior to January 1, 1975.[4]

---

**4.** Because we hold that pre-1975 contributions are unaffected by § 1103(c)(1)–(2)(A), we need not consider at length the rule of *Sohn v. Waterson,* 84 U.S. 596, 21 L.Ed. 737 (1873), which is relied on by the appellees. In *Sohn,* the Supreme Court was faced with a statute of limitations contained in legislation which was intended by a state legislature to have retroactive application. To legitimate such application, the Court held that holders of past causes of action had to be granted the full statutory time, measured from the statute's effective date, to bring their claims.

The century-old *Sohn* rule still enjoys great viability. *See Superior Engraving Co. v. N. L.*

**B.**

The second issue commanding our attention is the status of contributions made between January 1, 1975, the effective date of the Act, and April 5, 1975, the beginning date of the one-year period of contributions authorized for refund by the trustees. Chronology is significant. Application for the pension was made in December 1975; it was rejected on April 8, 1976. The claim for refund followed in April 1976, and the trustees' subsequent offer was predicated on the one-year period set forth in section 1103(c)(2)(A), to-wit, from April 1975 to April 1976. Had the trustees acted immediately on the pension request and decided the application in December 1975, Reuther Material Co. would not have made contributions from January to April 1976. The time lag between Reuther's application and the trustees' denial thus had a direct bearing on the denial of a refund of contribution paid from January 1975 to April 5, 1975.

Because Congress has emphasized "the equitable character" of the regulated pension plans, 29 U.S.C. § 1001(c), *supra,* we believe that equitable principles should be applied in this case. We are not persuaded that the December 1975 to April 1976 delay in reviewing the pension application can be attributed to Reuther. We are impressed that *some* action on the pension was initiated in December 1975, albeit by Andrew Reuther, and not the company. Under these unusual circumstances, we believe that the "equitable doctrine" of *Holmberg v. Armbrecht,* 327 U.S. 392, 397, 66 S.Ct. 582, 90 L.Ed. 743 (1946), should be con-

---

*R. B.,* 183 F.2d 783, 789 (7th Cir. 1950), *cert. denied,* 340 U.S. 930, 71 S.Ct. 490, 95 L.Ed. 671 (1951). The trustees would apply it to this case, contending that as to pre-ERISA contributions made by employers by mistake of fact, one making a claim for refund from January 1, 1975 through December 31, 1975, would be entitled to a full refund irrespective of when the contributions had been made, but any claim made after 1975 would be limited to only those contributions made within the year of the claim. However, since we, unlike the *Sohn* Court, deal with a statute intended by Congress to have prospective application only, the rule cannot apply.

sidered. *Holmberg* dealt with fraud, and reaffirmed "the old chancery rule that where a plaintiff has been injured by fraud and 'remains in ignorance of it without any fault or want of diligence or care on his part, the bar of the statute does not begin to run until the fraud is discovered, though there be no special circumstances or efforts on the part of the party committing the fraud to conceal it from the knowledge of the other party.' *Bailey v. Glover,* 21 Wall. 342, 348, 22 L.Ed. 636." 327 U.S. at 397, 66 S.Ct. at 585. The Court, speaking through Mr. Justice Frankfurter, stated: "This equitable doctrine is read into every federal statute of limitation." *Id.*

While recognizing that the case before us does not involve fraud, we note that it does present a factual complex in which there was "no want of diligence or care" by appellants. Appellants did not discover that Andrew Reuther was not eligible for the pension until four months after the pension application; the date of determination of ineligibility, unlike the date of pension application, fell more than one year beyond the effective date of the Act. Under these circumstances, we believe that it would be congruent with the congressional emphasis on the "equitable character" of the pension plans to apply the *Holmberg* "equitable doctrine" here. We recognize that *Holmberg* is not, in John W. Salmond's formulation, "authoritative precedent", but it at least rises to the dignity of a "persuasive precedent".[5] Thus, we will treat the December application of Andrew Reuther for a pension as equivalent to the filing of a claim for refund by the corporate appellant. So perceived, it follows that it would be inequitable for the trustees to retain contributions made during the three months of 1976 when they were considering the pension application. Accordingly, without purporting to establish a rule, but deciding only that the unusual circumstances of this case call into play equitable principles, we conclude that the one-year period of § 1103(c)(1)–(2)(A) does not apply here to bar the application of the corporate appellant for refund of all contributions made on behalf of Andrew Reuther after the effective date of the Act.

### III.

In sum, this case is an appeal from a summary judgment in favor of the pension fund trustees. In reversing that judgment, we do not decide that the corporate appellant is entitled to the return of all contributions made on behalf of Andrew Reuther, but only that the judgment was erroneously based on application of 29 U.S.C. § 1103(c)(1)–(2)(A). The employer may now attempt to show entitlement to the return of some or all of the mistaken contributions made before the effective date of the Act.

The judgment of the district court will be reversed and the cause remanded for further proceedings.

---

5. John W. Salmond, *The Theory of Judicial Precedents,* 16 Law Quarterly Rev. 376, 379–80 (1900).